IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.:

MICHAEL SPALL and KAREN SPALL,
as co-representatives of the Guardianship
of DAVID SPALL, an incompetent person,

      Plaintiffs,

v.

NCL (Bahamas) Ltd. d/b/a Norwegian Cruise
Lines, a foreign corporation

      Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff sues Defendant and alleges:

## SUBJECT MATTER JURISDICTION ALLEGATIONS

**A.  Diversity of Citizenship and Standing Allegations**

1.  This matter is being brought pursuant to the diversity of jurisdiction of this court, under to 28 U.S.C. § 1332.

2.  The Plaintiffs, Michael Spall and Karen Spall are citizens of Florida. On May 12, 2015, Michael Spall and Karen Spall filed to be appointed Co-Representatives for the Guardianship of an incompetent person, David Spall, before Probate Judge Janis Brustares Keyser of the Fifteenth Judicial Circuit, in and for Palm Beach County, Florida.  They have or will be appointed Co-Representatives for the Guardianship of David Spall, an incompetent person.  Accordingly, Michael Spall and Karen Spall, who are or will be the appointed Co-Representative of the Guardianship of the Incompetent, David Spall, have standing to sue on the Guardianship's behalf, and on behalf of the Guardianship's beneficiaries).

CASE NO.:

3.     Defendant NCL (Bahamas) LTD., d/b/a Norwegian Cruise Lines (hereinafter "NCL") is a foreign corporation, with a principal place of business in Miami, Florida.

   a.   According to the Florida Department of State, NCL is located in Miami, Florida, 33126. NCL also has designated Daniel S. Farkas, Esquire at 7665 Corporate Center Drive, Miami, FL 33126, as its agent for service of process.

   b.   According to NCL's own website, its "corporate headquarters" are located at 7665 Corporate Center Drive, Miami, Florida 33126.

4.     The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. §1332. In particular, the Plaintiff suffered respiratory arrest/cardiopulmonary arrest resulting in anoxic brain injury aboard one of Defendant's ships, *M/S Norwegian Getaway*. A good faith estimate of the Plaintiff's damages is currently **thirty million dollars**:

   a.   The passenger was a wage earner and is unable to work as a result of his incapacitation.

   b.   The passenger has suffered significant mental and physical pain and suffering from the time of the injury to the present, and will continue to suffer significant injury for the rest of his life.

   c.   The passenger has incurred significant medical expenses relating to his injury, and will continue to do so for the rest of his life.

   d.   The Plaintiff began choking at a table in the buffet dining room, fell to the floor, urinated and had liquid coming from his mouth. The ship's personnel took possession of the passenger and would not allow the Plaintiff's companions to check for potential choking or to perform the Heimlich maneuver on Plaintiff.  The ship's personnel would not themselves check the Plaintiff for potential choking or perform the Heimlich maneuver on Plaintiff. The Plaintiff was not examined to any extent before being taken to the infirmary by wheelchair by the ship's personnel. After an extended period of time, an examination by the ships medical staff revealed that Plaintiff had choked on a piece of meat. Due to the instructions by the ship's personnel and extended delay to begin any medical examination and/or treatment, Plaintiff suffered respiratory arrest/cardiopulmonary arrest resulting in anoxic brain injury.

CASE NO.:

**B. Admiralty Jurisdiction Allegations.**

5.    In the alternative, in the event that diversity of citizenship does not apply, this matter is being brought under the maritime and admiralty jurisdiction of the Court. In particular, Plaintiffs bring this action pursuant to Article III, §2 of the United States Constitution, delegating jurisdiction over admiralty cases to the federal courts. In particular, Plaintiffs bring this action pursuant to 28 U.S.C. §1333 which gives Article III courts "original jurisdiction … of … [a]ny civil case of admiralty or maritime jurisdiction." *Aqua Log, Inc. v. Lost and Abandoned Pre-Cut Logs and Rafts of Logs,* 709 F. 3d 1055, 1058 (11th Cir. 2013).

6.    Federal admiralty jurisdiction extends to all navigable waters, salt or fresh, with or without tides, natural or artificial, which are in fact navigable. *Aqua Log, Inc.,* at 1058. Thus, for a federal district court to have admiralty jurisdiction, the body of water must be navigable. *Id.* The term "navigable waters" means a body of water which, in its present configuration, constitutes a highway of commerce, between the states or with foreign countries. *Smith v. The Abandoned Vessel,* 610 F. Supp. 2d 739 (S.D. Tex. 2009). *See also Complaint of Paradise Holdings, Inc.,* 795 F. 2d 756 (9th Cir. 1986) ("To invoke federal admiralty jurisdiction in tort cases, the tort must occur on navigable waters and bear a significant relationship to traditional maritime activity").

7.    Defendant NCL operates the vessel *Norwegian Getaway* in navigable waters, on the high seas, between ports in the United States and ports in foreign countries. In particular, Defendant NCL is in the business of providing to the public and to the Plaintiff for compensation, vacation cruises aboard its vessel. The function and role of Defendant's ship, *Norwegian Getaway*, therefore, is clearly maritime.

8.    On or about November 29, 2014, Plaintiff was a paying passenger on Defendant's vessel, *Norwegian Getaway*, which was in navigable waters. On the aforementioned date, the Plaintiff suffered respiratory arrest/cardiopulmonary arrest after a choking incident aboard Defendant's ship. The Plaintiff's resulting anoxic brain injury was the result of Defendant's failure to reasonably respond to the emergent situation, negligent undertaking of duty, and refusal to properly provide medical care for Plaintiff. The Plaintiff's incident occurred while the ship was on navigable waters.

3

9.  This Honorable Court has admiralty jurisdiction over this case because the tort (the Plaintiff's injuries and the shipowner's negligence) occurred on navigable waters. More importantly, the case arises out of a traditional maritime activity: a cruise ship transporting passengers on the high seas.

10.  Pursuant to binding United States Supreme Court precedent, the legal rights and liabilities arising from the incident are within the full reach of this court's admiralty jurisdiction. *See Kermarec v. Compagnie Generale Transantlantic*, 358 U.S. 625, 628 (1959) ("Kermarec was injured aboard a ship upon navigable waters. It was there that the conduct of which he complained occurred. The legal rights and liabilities arising from that conduct were therefore within the full reach of the admiralty jurisdiction and measurable by the standards of maritime law."); *Doe v. Celebrity Cruises, Inc.* 394 F. 3d 891, 900 (11th Cir. 2004) ("As the cruise industry is maritime commerce, a crew member's sexual assault on a passenger obviously has a potentially disruptive impact on maritime commerce … Admiralty jurisdiction obviously exists where a crew member sexually batters a passenger while the two are onboard the ship."); *Complaint of Paradise Holdings, Inc.,* 795 F. 2d 756 (9th Cir. 1986) ("[T]he wrong alleged here is the negligent operation of a vessel in navigable waters. The alleged wrong has a traditional maritime flavor sufficient to invoke this jurisdiction. The function and role of the ship and its crew were clearly maritime. The type of vehicle involved was a ship … We conclude that there existed here a sufficient relationship to traditional maritime activity to support admiralty jurisdiction.").

11.  Additionally, the Defendant entered with the Plaintiff into a maritime contract. The contract, titled "Guest Ticket Contract," is between the Guest (in this case the Plaintiff) and Defendant, referred to in the contract as "Carrier shall mean NCL (Bahamas) Ltd. doing business as Norwegian Cruise Line". The contract includes a forum selection clause which provides that "[a]ny and all claims, disputes or controversies whatsoever arising from, related to, or in connection with this Contract or the Guest's voyage, including any activities on or off the vessel or transportation furnished therewith, with the sole exception of claims subject to binding arbitration under Section 10(b) above, shall be commenced, filed and litigated, if at all, before the United States District Court for the Southern District of Florida in Miami, Florida, U.S.A."

CASE NO.:

## **<u>PERSONAL JURISDICTION ALLEGATIONS</u>**

12.   Defendant is subject to the jurisdiction of the Courts of this state.

13.   As a preliminary matter, Defendant NCL is estopped from raising any objections to the personal jurisdiction of the Florida courts. In particular, NCL's "Guest Ticket Contract" includes a forum selection clause which forces all NCL's passengers (such as the Plaintiffs) to litigate "any and all claims, disputes or controversies ***whatsoever arising from, related to, or in connection with this Contract or the Guest's voyage*** … with the sole exception of claims subject to binding arbitration under Section 10(b) … before the United States District Court for the Southern District of Florida in Miami, Florida, U.S.A. … to the exclusion of the Courts of any other country, state, city or county where suit might otherwise be brought. (Emphasis added). Here, this case involves a claim of physical injury arising from the Plaintiff's voyage. Defendant NCL is a named party in the passage contract (and the aforementioned forum selection clause). Accordingly, by virtue of this forum selection clause, Defendants have purposefully availed themselves of the jurisdiction of courts in Florida.

14.   Defendants, at all times material hereto, personally or through an agent;

   a.   Operated, conducted, engaged in or carried on a business venture in this state and/or country or had an office or agency in this state and/or county;

   b.   Were engaged in substantial activity within this state;

   c.   Operated vessels in the waters of this state;

   d.   Purposefully availed themselves of the benefits of conducting activities in Florida by purposefully directing their activities toward the state, thereby obtaining the benefits and protections of the state's laws;

   e.   The acts of Defendants set out in this Complaint occurred in whole or in part of this country and/or state,

15.   Defendant NCL was engaged in the business of providing to the public and to the Plaintiff in particular, for compensation, vacation cruises aboard their vessel.

16.   Defendant NCL included a forum selection clause in the passenger-ticket contract requiring all litigation to be brought in a court of competent jurisdiction in Miami, Florida.

CASE NO.:

## **GENERAL ALLEGATIONS**

17. The causes of action asserted in this Complaint arise under the General Maritime Law of the United States.

18. At all times material hereto, Defendant owned, operated, managed, maintained and/or controlled the vessel, *Norwegian Gateway.*

19. At all times material hereto, Defendant NCL employed doctors, crew members, and employees and were responsible for all medical decisions and treatment aboard the vessel.

20. At all times material hereto, Defendant NCL owned, operated, managed, maintained and/or controlled the medical equipment in the ship's medical facility aboard the vessel, *Norwegian Gateway*.

21. On or about November 29, 2014, Plaintiff was a paying passenger on the Defendant's vessel, *Norwegian Gateway*, which was in navigable waters, for a cruise which began on November 29, 2014 and was scheduled to end on December 6, 2014.

22. At all times material hereto, the *Norwegian Gateway* was a member of the Cruise Lines International Association ("CLIA").

23.  At all times material hereto, NCL was <u>required</u> to have on board, a full-time, emergency medical professional, pursuant to the Cruise Industry Passenger Bill of Rights.

24. At all times material hereto, NCL employed and/or contracted with the Medical Doctors and staff aboard the vessel to serve as the full-time emergency professionals, required by the Cruise Industry Passenger Bill of Rights on board the *Norwegian Gateway*. As a result of the requirement for NCL to have on board, a full-time, emergency medical professional, NCL did not carry the Medical Staff on board the *Norwegian Gateway* for the convenience of its passengers; rather, NCL employed and/or contract with and/or provided the Medical Staff on board the *Norwegian Gateway* in connection with its operation of the *Norwegian Gateway* as part of NCL's business of operating cruise ships.

25. NCL is in the business of providing medical care. Like other amenities offered onboard its ships (i.e. bars, restaurants, spas); NCL also offers to passengers modern medical facilities onboard its ships for profit.  This was recently recognized by the Eleventh

CASE NO.:

Circuit Court of Appeals in the case of *Franza v. Royal Caribbean Cruises, Ltd.*, 13-13067 (11th Cir. Nov. 10, 2014), p. 38-39, n. 14 (emphasis added):

> What's more, we suspect that Franza's allegations only scratch the surface. We have no difficulty imagining other cases in which additional evidence could demonstrate a cruise line's medical expertise – particularly since, in the public domain, cruise lines routinely claim to possess such knowledge. See, e.g., Peltz, Has Time Passed Barbetta by?, at 19 (**quoting statement by Director of Princess Cruise Lines Medical Department claiming that "major cruise lines have designed modern medical facilities comprising several ICU's, computerized radiology, and sophisticated laboratories" and "have achieved accreditation to international health care standards and ISO 9001 certification**") … Press Release Princess Cruises, Princess Cruises' Medical Departments Earn Unique Distinction with Prestigious Quality Certification and Accreditation (May 6, 2010) … **We do not credit as fact any information not pled in the complaint, but we note that another plaintiff could have cited any of this information to rebut the basic assumption that cruise ships are not in the business of providing medical care.**

26.    At all times material hereto, NCL controlled the Plaintiff's (in discussing allegations, the term "Plaintiff" shall be used to refer to David Spall, although he is technically Plaintiffs' ward, for ease of reference) medical care on board the *Norwegian Gateway*. *See Franza v. Royal Caribbean Cruises, Ltd.*, 13-13067 (11th Cir. Nov. 10, 2014), p. 43 ("If shipowners could be held liable for the photography of a subcontractor's employee, we see little reason to suppose they could not be called to answer for the medical negligence of the practitioners they directly employ and control.").

27.    On November 29, 2014, the Plaintiff and his companions boarded the *Norwegian Getaway* to embark on a seven-day cruise leaving the Port of Miami.

28.    At approximately 4:15 p.m. on November 29, 2014 the Plaintiff and his companions went to the ship's dining room to get something to eat from the buffet line. Immediately upon Plaintiff's arrival at a table with his tray of food, Plaintiff collapsed on the floor.

29.    Plaintiff's companions noticed fluid coming from Plaintiff's mouth and that Plaintiff had urinated.

30.    Defendant, NCL's personnel responded and would not allow any other person to assist in attending to Plaintiff.

31.    Defendant, NCL's personnel did not immediately evaluate Plaintiff for choking and/or perform a Heimlich maneuver and/or administer CPR.

CASE NO.:

32. Defendant NCL ignored the pleas of Plaintiff's companions to perform the Heimlich maneuver and/or administer CPR.

33. Defendant's crew failed to immediately notify Defendant's medical staff of the circumstances of Plaintiff's condition which would reasonably lead medical staff to suspect and treat a blocked windpipe.

34. Defendant, NCL's personnel loaded Plaintiff into a wheelchair and took him to the infirmary.

35. The following was noted in ship's Injury and Illness Medical Record for Plaintiff at 16:30 (4:30 p.m.):

> *"Pt. arrived to medical clinic unresponsive, cyanotic, flaccid, CPR initiated, AED connected and no defibrillation recommended, CPR continued, O2 ventilation performed and oral inspection revealed impacted meat bolus in hypopharynx."*

36. Defendant, Dr. 1 removed meat bolus from Plaintiff's hypopharynx and CPR was continuing.

37. Plaintiff regained palpable pulse but remained unresponsive.

38. Defendant's failures and delay in taking reasonable responsive measures to Plaintiff's condition caused the prolonged loss of oxygen to Plaintiff's vital organs and concurrent injury.

39. Plaintiff was evacuated from ship to medical facility in Miami.

40. At all times material, Defendant NCL's medical staff and crew members were represented by NCL as NCL's employees in that:

a. They wore ships' uniforms.

b. They ate with the ship's crew.

c. They were under the commands of the ship's officers.

d. They were called ship's officers and crew members by NCL, and by the ship's officers and crew.

e. The literature provide by NCL showed the medical staff as a crew members, ships officers.

f. They worked on the ship's hospital and on the ship's private island.

g. They were paid a salary by NCL.

CASE NO.:

     h. NCL furnished the ship's medical center aboard its ship, including equipment and medications;

     i. NCL charged and collected the money for medical center charges.

     j. Upon information and belief, the ship's medical staff and employees, as well as the crew were actual employees of Defendant NCL.

41. At no time did NCL represent to the Plaintiff, the Plaintiff's travel companions, or the ship's passengers in a meaningful way that the ship's medical staff and doctors were not agents or employees of NCL.

42. At all material times, the Plaintiff relied on NCL's representations that the ship's staff/crew included a medical doctor employed by NCL and that the vessel had a NCL's medical facility.

43. On May 12, 2015, Michael Spall and Karen Spall, David Spall's natural parents, filed a petition to be appointed Co-Representatives of the Guardianship of an incompetent person, David Spall, in the Fifteenth Judicial Circuit, in and for Palm Beach County, Florida.   Accordingly, Michael Spall and Karen Spall, the appointed Co-Representatives of the Guardianship of an incompetent person, David Spall, have or will be appointed Co-Personal Representatives of the Guardianship of an incompetent person, David Spall, and have standing to sue on David Spall's behalf.   Plaintiff's representatives, Michael Spall and Karen Spall, file suit as the co-representative of the guardianship of David Spall, to recover all damages allowable by law, including but not limited to:

     a. David Spall's past and future mental and physical anguish, pain and suffering, and loss of capacity to lead a normal life;

     b. David Spall's past and future loss of income or earning capacity;

     c. David Spall's past and future medical costs and expenses relating to his injury.

## COUNT I
## NEGLIGENCE AGAINST NCL FOR THE ACTS OF THEIR CREW AND MEDICAL STAFF BASED ON THE THEORY OF RESPONDEAT SUPERIOR AND/OR VICARIOUS LIABILITY

CASE NO.:

Plaintiffs reallege, adopt, and incorporate by reference the allegations in paragraphs one (1) through forty three (43) as though alleged originally herein.

44.    NCL is in the business of providing medical response and care. Like other amenities offered onboard its ships (i.e. bars, restaurants, spas); NCL also offers to passengers modern medical facilities onboard its ships for profit.  This was recently recognized by the Eleventh Circuit Court of Appeals in the case of *Franza v. Royal Caribbean Cruises, Ltd.,* 13-13067 (11th Cir. Nov. 10, 2014), p. 38-39, n. 14 (emphasis added):

> What's more, we suspect that Franza's allegations only scratch the surface. We have no difficulty imagining other cases in which additional evidence could demonstrate a cruise line's medical expertise – particularly since, in the public domain, cruise lines routinely claim to possess such knowledge. See, e.g., Peltz, Has Time Passed Barbetta by?, at 19 (**quoting statement by Director of NCL Cruise Lines Medical Department claiming that "major cruise lines have designed modern medical facilities comprising several ICU's, computerized radiology, and sophisticated laboratories" and "have achieved accreditation to international health care standards and ISO 9001 certification"**) … Press Release NCL Cruises, NCL Cruises' Medical Departments Earn Unique Distinction with Prestigious Quality Certification and Accreditation (May 6, 2010) … **We do not credit as fact any information not pled in the complaint, but we note that another plaintiff could have cited any of this information to rebut the basic assumption that cruise ships are not in the business of providing medical care.**

45.    At all times material hereto, Defendant's crew, employees, doctors and medical staff, were agents, servants and/or employees of NCL.   At all times material hereto, Defendant's crew, employees, doctors and medical staff were acting within the scope of their employment and/or agency.

46.    NCL is estopped to deny that their crew, employees, doctors, and medical staff, were its agent(s) and/or employee(s) and/or servant(s). At all times material hereto, NCL controlled the Plaintiff's medical care on board the *Norwegian Getaway*.

   a. In this case, NCL, through their crew, employees, doctors, and medical staff, directed the medical response and care that was provided to the Plaintiff on board the *Norwegian Getaway*. Accordingly, by virtue of NCL' control of the Plaintiff's medical care; it is vicariously liable for negligent shipboard medical care and response to his medical emergency. *See Franza v. Royal Caribbean Cruises, Ltd.,* 13-13067 (11th Cir. Nov. 10, 2014) ("Several cruise lines now purport to staff

CASE NO.:

      extensive land-based medical departments with expert personnel … By many accounts, these and other onshore practitioners meaningfully communicate with a ship's medical employees even while the ship is at sea.").

    b.  Indeed, as evidenced by the shipboard medical records, NCL's crew, employees, doctors, and medical staff were actively involved in the Plaintiff's treatment provided on board the *Norwegian Getaway.*

47.  At all times material, Defendant NCL's medical staff and crew members were represented by NCL as NCL's employees in that:

    a.  They wore ships' uniforms.

    b.  They ate with the ship's crew.

    c.  They were under the commands of the ship's officers.

    d.  They were called ship's officers and crew members by NCL, and by the ship's officers and crew.

    e.  The literature provide by NCL showed the medical staff as a crew members, ships officers.

    f.  They worked on the ship's hospital and on the ship's private island.

    g.  They were paid a salary by NCL.

    h.  NCL furnished the ship's medical center aboard its ship, including equipment and medications;

    i.  NCL charged and collected the money for medical center charges.

    j.  Upon information and belief, the ship's medical staff and employees, as well as the crew were actual employees of Defendant NCL.

48.  At no time did NCL represent to the Plaintiff, the Plaintiff's travel companions, or the ship's passengers in a meaningful way that Defendant's crew, employees, doctors, and medical staff were not agents or employees of NCL.

49.  At all material times, the Plaintiffs relied on NCL' representations that the ship's staff/crew included a medical doctor employed by NCL and that the vessel had a NCL' medical facility.

50.  At all times material hereto, Defendant's crew, employees, doctors, and medical staff, owed a duty to provide the Plaintiff with reasonable care under the circumstances.

CASE NO.:

Defendant's crew, employees, doctors, and medical staff breached their duty to provide reasonable care under the circumstances by:

a. Failing to promptly provide Plaintiff with proper and/or adequate medical care and attention; and/or

b. Failing to timely diagnose Plaintiff's medical condition; and/or

c. Failing to adequately monitor Plaintiff's medical condition; and/or

d. Failing to adequately treat Plaintiff's medical condition; and/or

e. Failing to adequately record Plaintiff's medications; and/or

f. Failing to adequately advise Plaintiff regarding his medical condition; and/or

g. Failing to recommend appropriate medical care; and/or

h. Knowingly rendering treatment to Plaintiff while lacking the proper licenses to practice medicine in the jurisdiction of the ship; and/or

i. Failing to have proper licenses to practice medicine in the jurisdiction of the ship; and/or

j. Failing to stabilize Plaintiff's medical condition; and/or

k. Allowing Plaintiff's medical condition to significantly deteriorate; and/or

l. Allowing Plaintiff's medical condition to deteriorate to the point where he required emergency medical treatment; and/or

m. Failing to recommend an adequate a proper and adequate medical facility to treat Plaintiff's emergency medical condition; and/or

n. Failing to utilize available medical testing and/or available medical equipment with an adequate frequency during the medical care and treatment of Plaintiff; and/or

o. Failing to utilize telephone and/or video consultations with specialists during the medical care and treatment of Plaintiff.

p. Failing to evacuate the Plaintiff to the nearest port, delaying lifesaving treatment.

51. NCL had a duty to provide the Plaintiff with reasonable care under the circumstances and through the acts of its agent and/or employee and/or servant, Defendant's crew, employees, doctors, and medical staff, breached their duty to provide Plaintiff with reasonable care under the circumstances.

52. As a result of the negligence of NCL, the following damages were incurred:

12

CASE NO.:

    a.  Plaintiff, David Spall suffered respiratory arrest/caridiopulmonary arrest resulting in anoxic brain injury.

    b.  Plaintiff, David Spall incurred extensive medical expense and will continue to incur extensive medical expense for the rest of his life.

    c.  Plaintiff, David Spall lost the benefit of the net accumulations that he would have continued to earn.

    d.  David Spall suffered permanent mental and physical injury, anguish, pain, and suffering, and capacity to enjoy life.

**WHEREFORE**, the Plaintiffs demand judgment for all damages allowable by law, including but not limited to:

    a.  David Spall's past and future mental and physical anguish, pain and suffering, and loss of capacity to lead a normal life;

    b.  David Spall's past and future loss of income or earning capacity;

    c.  David Spall's past and future medical costs and expenses relating to his injury.

Plaintiff's further demand trial by jury.

## COUNT II
## NEGLIGENCE AGAINST NCL FOR NEGLIGENT HIRING AND/OR NEGLIGENT RETENTION OF DEFENDANT'S CREW, EMPLOYEES, DOCTORS, AND MEDICAL STAFF

Plaintiffs reallege, adopt, and incorporate by reference the allegations in paragraphs one (1) through forty three (43) as though alleged originally herein.

53.  At all times material hereto, Defendant's crew, employees, doctors, and medical staff, were agents and/or servants and/or employees of NCL.

54.  At all times material hereto, NCL had a duty to hire a properly qualified and competent shipboard crew, employees, doctors, and medical staff.

55.  At all times material hereto, NCL had a duty to exercise reasonable care for the safety of its passengers, including Plaintiff.

56.  At all times material, Defendant NCL and/or its agents, servants, and/or employees breached its duty/duties to Plaintiff, as follows:

CASE NO.:

a. hiring Defendant's crew, employees, doctors, and medical staff, who were not competent, not duly qualified and not licensed to practice medicine or respond to emergent medical situations in the jurisdiction of the ship; and/or

b. retaining Defendant's crew, employees, doctors, and medical staff, who were not competent, not duly qualified, and not licensed to practice medicine or respond to emergent medical situations in the jurisdiction of the ship;

All of which caused and/or contributed to further causing severe and permanent injury to Plaintiff when Defendant's crew, employees, doctors, and medical staff failed to adequately identify and/or adequately monitor and/or adequately treat and/or adequately refer Plaintiff for emergency medical care.

57. As a result of the negligence of NCL, the following damages were incurred:

a. Plaintiff, David Spall suffered respiratory arrest/caridiopulmonary arrest resulting in anoxic brain injury.

b. Plaintiff, David Spall incurred extensive medical expense and will continue to incur extensive medical expense for the rest of his life.

c. Plaintiff, David Spall lost the benefit of the net accumulations that he would have continued to earn.

d. David Spall suffered permanent mental and physical injury, anguish, pain, and suffering, and capacity to enjoy life.

**WHEREFORE,** the Plaintiffs demand judgment for all damages allowable by law, including but not limited to:

a. David Spall's past and future mental and physical anguish, pain and suffering, and loss of capacity to lead a normal life;

b. David Spall's past and future loss of income or earning capacity;

c. David Spall's past and future medical costs and expenses relating to his injury.

Plaintiff's further demand trial by jury.

## <u>COUNT III</u>
## <u>GENERAL NEGLIGENCE AGAINST NCL</u>

Plaintiffs reallege, adopt, and incorporate by reference the allegations in paragraphs one (1) through forty three (43) as though alleged originally herein.

CASE NO.:

58.  At all times material hereto, NCL had a duty to exercise reasonable care for the safety of its passengers, including Plaintiff.

59.  NCL is in the business of providing medical care. Like other amenities offered onboard its ships (i.e. bars, restaurants, spas); NCL also offers to passengers modern medical facilities onboard its ships for profit.  This was recently recognized by the Eleventh Circuit Court of Appeals in the case of *Franza v. Royal Caribbean Cruises, Ltd.,* 13-13067 (11th Cir. Nov. 10, 2014), p. 38-39, n. 14 (emphasis added):

> What's more, we suspect that Franza's allegations only scratch the surface. We have no difficulty imagining other cases in which additional evidence could demonstrate a cruise line's medical expertise – particularly since, in the public domain, cruise lines routinely claim to possess such knowledge. <u>See, e.g.,</u> Peltz, <u>Has Time Passed Barbetta by?,</u> at 19 (**quoting statement by Director of NCL Cruise Lines Medical Department claiming that "major cruise lines have designed modern medical facilities comprising several ICU's, computerized radiology, and sophisticated laboratories" and "have achieved accreditation to international health care standards and ISO 9001 certification**") … Press Release NCL Cruises, NCL Cruises' Medical Departments Earn Unique Distinction with Prestigious Quality Certification and Accreditation (May 6, 2010) … **We do not credit as fact any information not pled in the complaint, but we note that another plaintiff could have cited any of this information to rebut the basic assumption that cruise ships are not in the business of providing medical care.**

60.  At all times material hereto, NCL controlled the Plaintiff's medical care on board the *Norwegian Getaway.*

61.  Accordingly, by virtue of NCL' control of the Plaintiff's medical care; it is liable for negligent shipboard medical care. *See Franza v. Royal Caribbean Cruises, Ltd.,* 13-13067 (11th Cir. Nov. 10, 2014), p. 43 ("If shipowners could be held liable for the photography of a subcontractor's employee, we see little reason to suppose they could not be called to answer for the medical negligence of the practitioners they directly employ and control.").

62.  At all times material, Defendant NCL and/or its agents, servants, and/or employees breached its duty/duties to Plaintiff, as follows:

   a.  Failing to initiate and/or use tele-medicine and/or video-medicine sources aboard the *Norwegian Getaway*; and/or;

CASE NO.:

    b.  Failing to promulgate and/or enforce adequate policies and procedures to ensure that Plaintiff received prompt, proper, and adequate medical treatment; and/or;

    c.  Failing to comply with the Cruise Industry Passenger Bill of Rights; and/or;

    d.  Failing to provide adequate medical equipment aboard the *Norwegian Getaway*; and/or;

    e.  Failing to promulgate and/or enforce adequate medical procedures aboard the *Norwegian Getaway*; and/or;

    f.  Failing to warn of dangers and/or hazards, related to medical care on board the ship, that NCL knew or should have known about; and/or;

    g.  Failing to adequately assist the Plaintiffs with obtaining adequate medical care; and/or

    h.  Actively directing the Plaintiffs to inadequate medical care;

All of which caused and/or contributed to further causing severe and permanent injury to the Plaintiff.

63.    At all material times, Defendant NCL had exclusive custody and control of the vessel *Norwegian Getaway*.

64.    Defendant NCL knew of the foregoing conditions causing the subject accident and did not correct them, or the conditions existed for a sufficient length of time so that Defendant NCL, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.

65.    As a result of the negligence of NCL, the following damages were incurred:

    a.  Plaintiff, David Spall suffered respiratory arrest/caridiopulmonary arrest resulting in anoxic brain injury.

    b.  Plaintiff, David Spall incurred extensive medical expense and will continue to incur extensive medical expense for the rest of his life.

    c.  Plaintiff, David Spall lost the benefit of the net accumulations that he would have continued to earn.

    d.  David Spall suffered permanent mental and physical injury, anguish, pain, and suffering, and capacity to enjoy life.

**WHEREFORE**, the Plaintiffs demand judgment for <u>all damages allowable by law</u>, including but not limited to:

CASE NO.:

    a.  David Spall's past and future mental and physical anguish, pain and suffering, and loss of capacity to lead a normal life;

    b.  David Spall's past and future loss of income or earning capacity;

    c.  David Spall's past and future medical costs and expenses relating to his injury.

Plaintiff's further demand trial by jury.


## COUNT IV
## APPARENT AGENCY AGAINST NCL FOR ACTS OF ITS DOCTORS AND MEDICAL STAFF

Plaintiffs reallege, adopt, and incorporate by reference the allegations in paragraphs one (1) through forty three (43) as though alleged originally herein.

66.  At all material times, Defendant's doctors and medical staff saw, examined, treated and/or were consulted concerning the medical condition of while aboard the *Norwegian Getaway*.

67.  At all times material, Defendant NCL's medical staff and crew members were represented by NCL as NCL's employees in that:

    a. They wore ships' uniforms.

    b. They ate with the ship's crew.

    c. They were under the commands of the ship's officers.

    d. They were called ship's officers and crew members by NCL, and by the ship's officers and crew.

    e. The literature provide by NCL showed the medical staff as a crew members, ships officers.

    f. They worked on the ship's hospital and on the ship's private island.

    g. They were paid a salary by NCL.

    h. NCL furnished the ship's medical center aboard its ship, including equipment and medications;

    i. NCL charged and collected the money for medical center charges.

    j. Upon information and belief, the ship's medical staff and employees, as well as the crew were actual employees of Defendant NCL.

CASE NO.:

68.  At no time did Defendant's crew, employees, doctors, or medical staff represent to the Plaintiff in particular or the ship's passengers in general, in any way that they were not agents or employees of NCL.

69.  At all material times, Plaintiff reasonably relied on the representations to their detriment that Defendant's crew, employees, doctors, or medical staff were employees and/or agents and/or servants of NCL.

70.  It was reasonable to believe that Defendant's crew, employees, doctors, or medical staff were NCL' agents because they wore a ship's uniform and admitted Plaintiff to the ship's medical facility. Further, the ship's medical facility equipment and medicines were furnished by NCL and NCL charged and collected money for the medical care. In addition, at all times material, Defendant's crew, employees, doctors, or medical staff spoke and acted as though they were authorized to do so by NCL.

71.  This reasonable reliance was detrimental because it significantly worsened Plaintiff's medical condition.

72.  Defendant NCL is estopped to deny that Defendant's crew, employees, doctors, or medical staff were its apparent agents and/or apparent employees and/or apparent servants.

73.  At all times material, NCL had a duty to provide the Plaintiff with reasonable care under the circumstances and through the acts of its apparent agent.

74.  At all times material, NCL through its apparent agents, Defendant's crew, employees, doctors, or medical staff breached its duty to provide Plaintiff with reasonable care under the circumstances.

75.  Plaintiff was injured due to the fault and/or negligence of NCL through the acts of its apparent agents, Defendant's crew, employees, doctors, or medical staff, as follows:

   a.  Failing to promptly provide Plaintiff with proper and/or adequate medical care and attention; and/or

   b.  Failing to timely diagnose Plaintiff's medical condition; and/or

   c.  Failing to adequately monitor Plaintiff's medical condition; and/or

   d.  Failing to adequately treat Plaintiff's medical condition; and/or

   e.  Failing to adequately record Plaintiff's medications; and/or

   f.  Failing to adequately advise Plaintiff regarding his medical condition; and/or

CASE NO.:

g.  Failing to recommend appropriate medical care; and/or

h.  Knowingly rendering treatment to Plaintiff while lacking the proper licenses to practice medicine in the jurisdiction of the ship; and/or

i.  Failing to have proper licenses to practice medicine in the jurisdiction of the ship; and/or

j.  Failing to stabilize Plaintiff's medical condition; and/or

k.  Allowing Plaintiff's medical condition to significantly deteriorate; and/or

l.  Allowing Plaintiff's medical condition to deteriorate to the point where he required emergency medical treatment; and/or

m.  Failing to recommend an adequate a proper and adequate medical facility to treat Plaintiff's emergency medical condition; and/or

n.  Failing to utilize available medical testing and/or available medical equipment with an adequate frequency during the medical care and treatment of Plaintiff; and/or

o.  Failing to utilize telephone and/or video consultations with specialists during the medical care and treatment of Plaintiff.

p.  Failing to evacuate the Plaintiff to the nearest port, delaying lifesaving treatment.

76.  As a result of the negligence of NCL, the following damages were incurred:

a.  Plaintiff, David Spall suffered respiratory arrest/caridiopulmonary arrest resulting in anoxic brain injury.

b.  Plaintiff, David Spall incurred extensive medical expense and will continue to incur extensive medical expense for the rest of his life.

c.  Plaintiff, David Spall lost the benefit of the net accumulations that he would have continued to earn.

d.  David Spall suffered permanent mental and physical injury, anguish, pain, and suffering, and capacity to enjoy life.

**WHEREFORE,** the Plaintiffs demand judgment for all damages allowable by law, including but not limited to:

a.  David Spall's past and future mental and physical anguish, pain and suffering, and loss of capacity to lead a normal life;

b.  David Spall's past and future loss of income or earning capacity;

c.  David Spall's past and future medical costs and expenses relating to his injury.

CASE NO.:

Plaintiff's further demand trial by jury.

## COUNT V
## NEGLIGENT UNDERTAKING BY NCL, ITS CREW, EMPLOYEES, MEDICAL STAFF AND DOCTORS

Plaintiffs reallege, adopt, and incorporate by reference the allegations in paragraphs one (1) through forty three (43) as though alleged originally herein.

77. NCL undertakes to run a cruise line, and specifically, undertakes to operate the *Norwegian Getaway* as a cruise ship, and has a duty to provide reasonable care to their passengers in an emergency situation.

78. NCL undertakes to provide food and beverages upon their ship to their passengers.

79. NCL is aware that their passengers have limited access to medical facilities and treatment while aboard their vessel.

80. NCL is further aware that 911 and other emergency medical services are not available to their passengers.

81. NCL undertakes to provide first responder services to their passengers in the event of an onboard medical emergency.

82. NCL undertakes to provide further medical care to their passengers.

83. A clear hierarchy exists on NCL's vessels, including the *Getaway*.

84. All passengers are subject to the orders of the master, or Captain of the ship.

85. Passengers are indoctrinated when on board, starting at the muster drill that they are compelled to follow any orders of the master in the event of an emergency.

86. Passengers are further advised, and it is also the case, that crew members are tasked with carrying out orders from and for the master.

87. At the time of the incident, Plaintiff was eating food in the ships dining room, as he was invited to do, when he became unconscious.

88. Crew members undertook to perform emergency first response services to Plaintiff. They undertook these services in a negligent manner.

89. There is no "good Samaritan" doctrine upon a ship within its hierarchy of command.

90. Defendants have a duty to respond to a passenger's emergency in a reasonable and timely manner.

CASE NO.:

91.    Crew members undertook to respond to the emergency, and took control of the Plaintiff's body.

92.    Crew members undertook the duty to act as the first responders who took control of the emergency situation.

93.    Crew members were inadequately and unreasonably trained to deal with an emergency such as the incident which incapacitated Plaintiff.

94.    Crew members undertook their duty to respond in a negligent and unreasonable manner.

95.    Crew members failed to provide reasonable care in the emergent situation, and failed to reasonably and in a timely manner notify and inform the medical staff of the circumstances of the emergency.

96.    Crew members unreasonably failed to perform the Heimlich maneuver or CPR.

97.    Crew members unreasonably ignored the pleadings of Plaintiff's companions to perform the Heimlich maneuver or CPR.

98.    Despite being made aware of a possible obstruction, and that Plaintiff, a young man lost consciousness while eating, crew members unreasonably failed to take any reasonable steps to respond to an airway obstruction.

99.    Plaintiff was injured due to the fault and/or negligence of NCL through the negligent undertaking of its crew members, employees, medical staff, and doctors, as follows:

   a.  Failing to promptly provide Plaintiff with proper and/or adequate medical care and attention; and/or

   b.  Failing to timely diagnose Plaintiff's medical condition; and/or

   c.  Failing to adequately monitor Plaintiff's medical condition; and/or

   d.  Failing to adequately treat Plaintiff's medical condition; and/or

   e.  Failing to adequately record Plaintiff's medications; and/or

   f.  Failing to adequately advise Plaintiff regarding his medical condition; and/or

   g.  Failing to recommend appropriate medical care; and/or

   h.  Knowingly rendering treatment to Plaintiff while lacking the proper licenses to practice medicine in the jurisdiction of the ship; and/or

   i.  Failing to have proper licenses to practice medicine in the jurisdiction of the ship; and/or

CASE NO.:

    j.   Failing to stabilize Plaintiff's medical condition; and/or

    k.   Allowing Plaintiff's medical condition to significantly deteriorate; and/or

    l.   Allowing Plaintiff's medical condition to deteriorate to the point where he required emergency medical treatment; and/or

    m.  Failing to recommend an adequate a proper and adequate medical facility to treat Plaintiff's emergency medical condition; and/or

    n.   Failing to utilize available medical testing and/or available medical equipment with an adequate frequency during the medical care and treatment of Plaintiff; and/or

    o.   Failing to utilize telephone and/or video consultations with specialists during the medical care and treatment of Plaintiff.

    p.   Failing to evacuate the Plaintiff to the nearest port, delaying lifesaving treatment.

86.   As a result of the negligent undertaking, the following damages were incurred:

    a.   Plaintiff, David Spall suffered respiratory arrest/caridiopulmonary arrest resulting in anoxic brain injury.

    b.   Plaintiff, David Spall incurred extensive medical expense and will continue to incur extensive medical expense for the rest of his life.

    c.   Plaintiff, David Spall lost the benefit of the net accumulations that he would have continued to earn.

    d.   David Spall suffered permanent mental and physical injury, anguish, pain, and suffering, and capacity to enjoy life.

**WHEREFORE**, the Plaintiffs demand judgment for all damages allowable by law, including but not limited to:

    a.   David Spall's past and future mental and physical anguish, pain and suffering, and loss of capacity to lead a normal life;

    b.   David Spall's past and future loss of income or earning capacity;

    c.   David Spall's past and future medical costs and expenses relating to his injury.

Plaintiff's further demand trial by jury.

    d.   David Spall suffered permanent mental and physical injury, anguish, pain, and suffering, and capacity to enjoy life.

**WHEREFORE**, the Plaintiffs demand judgment for <u>all damages allowable by law</u>, including but not limited to:

22

CASE NO.:

    a.  David Spall's past and future mental and physical anguish, pain and suffering, and loss of capacity to lead a normal life;

    b.  David Spall's past and future loss of income or earning capacity;

    c.  David Spall's past and future medical costs and expenses relating to his injury.

Plaintiff's further demand trial by jury.

**DATED THIS 11TH DAY OF NOVEMBER, 2015.**

Respectfully submitted,

THE HAGGARD LAW FIRM
330 Alhambra Circle
Coral Gables, Florida 33134
Telephone: (305) 446-5700
Facsimile: (305) 446-1154

*Counsel for Plaintiffs*

BY:    /s/ Todd J. Michaels
          TODD J. MICHAELS
          Florida Bar No.
          tjm@haggardlawfirm.com